**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Randy Alan PARKER; John Arthur Sorenson, Defendants–Appellants.**

**Nos. 95–4021, 95–4024.**

United States Court of Appeals,
Tenth Circuit.

Dec. 19, 1995.

Bruce C. Lubeck, Assistant United States Attorney (Scott M. Matheson, Jr., United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff–Appellee.

G. Fred Metos, Salt Lake City, Utah, for Defendant–Appellant Randy Alan Parker and Reid Tateoka, of McKay, Burton & Thurman, Salt Lake City, Utah, for Defendant–Appellant John Arthur Sorenson.

Before BALDOCK, McWILLIAMS, and REAVLEY,* Circuit Judges.

BALDOCK, Circuit Judge.

## I. INTRODUCTION

On December 14, 1993, Utah Highway Patrol Trooper Lance Bushnell discovered methamphetamine and firearms in the trunk and passenger compartment of Defendants' car during a traffic stop, and recorded the events on his patrol car video camera. The grand jury returned a two-count indictment charging Defendants with possession of methamphetamine with intent to distribute ("Count One"), 21 U.S.C. § 841(a)(1), and use of a firearm in connection with a drug trafficking offense ("Count Two"), 18 U.S.C. § 924(c). Defendants moved to suppress the evidence seized from their car, contending the stop and search were unconstitutional. Defendants also moved to dismiss the indictment on due process grounds when they discovered that a portion of the videotaped events had been recorded over. The district court denied Defendants' motions to suppress and dismiss. Defendants pleaded guilty to the indictment charges conditioned upon their right to appeal the district court's denial order. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

* The Honorable Thomas M. Reavley, Senior Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

## II. FACTS

### A. THE STOP

On December 14, 1993, Utah Highway Patrol Troopers Bushnell and Paul Mangleson were monitoring traffic on Interstate 15 in Juab County, Utah. At 2:45 p.m., Trooper Bushnell observed a gray Ford Thunderbird approach from the south and rapidly decelerate when it neared his patrol car. Trooper Bushnell pulled in behind the vehicle. As he followed, Bushnell observed the vehicle drift into the emergency lane (shoulder) one-fourth of the vehicle width for about 200 feet, reenter the lane of travel, and then drift back into the emergency lane. Bushnell activated his emergency lights, which activated his patrol car video camera.

### B. VIDEOTAPED EVENTS

Defendant Sorenson, the driver of the Thunderbird, pulled over into the emergency lane and stopped the car. Trooper Bushnell observed Sorenson move his shoulders side to side and forward and down, as if he was concealing something. Bushnell approached, informed Sorenson he was swerving, and asked him if he had been drinking. Sorenson said no. Bushnell asked for Sorenson's license and registration. Sorenson produced a license, but no registration. Defendant Parker, who was in the passenger seat, said he owned the car and produced an insurance card, and eventually produced a registration.

During this exchange, Trooper Bushnell smelled burned marijuana in Defendants' Thunderbird. He asked Trooper Mangleson to verify the smell, which he eventually did. Vol. I at 121–22. Trooper Bushnell had Sorenson step out of the vehicle and perform field sobriety tests—i.e., a horizontal gaze nystagmus test and a one-legged stand test. Bushnell concluded Sorenson performed "poorly" on both tests. Because Bushnell could not smell alcohol, he suspected drugs were the cause of Sorenson's poor driving and performance on the sobriety tests.

Trooper Bushnell returned to Defendants' car and asked Parker if there were any drugs in the car. Parker said no. Bushnell asked Parker if he could search the car for drugs and guns. Parker did not respond.

Trooper Bushnell returned to his patrol car to run a computer check to determine whether Defendants had any prior arrests. While waiting for a response from dispatch, Bushnell questioned Defendants regarding their travel. While he spoke with Sorenson, dispatch relayed a "10–0" caution signal, indicating to Trooper Bushnell that Defendants had prior arrests for weapons or violence and that he should use caution. Bushnell asked Sorenson if there were any weapons in the car. Sorenson said there was a pistol between the front seats. Parker gave the troopers permission to search the car for weapons. Trooper Bushnell searched between the seats and found a 9 millimeter pistol with a loaded clip.

### C. VIDEOTAPED EVENTS RECORDED OVER

Trooper Bushnell then frisked Sorenson and found a rolled up dollar bill, with a white powder residue. Bushnell testified that rolled-up dollar bills are typically used to ingest narcotics, such as cocaine and methamphetamine. Bushnell also discovered a burnt marijuana cigarette between Sorenson's pants and underwear. Trooper Mangleson saw both the dollar bill and the burnt marijuana cigarette. Vol. II at 34; 84. Trooper Bushnell placed the rolled-up dollar bill and the burnt marijuana cigarette on the hood of his patrol car. Troopers Bushnell and Mangleson then began to search the passenger area of the car.

As Troopers Bushnell and Mangleson were searching the passenger area of the car, Trooper Charlie Wilson arrived on the scene. Bushnell took Trooper Wilson to his patrol car to show him the contraband that had been seized. When they checked the hood of Bushnell's car, Bushnell and Wilson noticed that the marijuana cigarette was missing. They confronted Sorenson, who was chewing the marijuana cigarette. Sorenson spit the cigarette out and led the officers to the rest of the cigarette, on the ground near the patrol car. As Trooper Bushnell was picking up the rest of the marijuana cigarette from the ground, he saw and retrieved a bag containing methamphetamine from under-

neath the patrol car. The troopers then searched the trunk of the Defendants' car and found a .380 pistol and approximately 750 grams of a substance containing methamphetamine.

## D. OPERATION OF THE VIDEOTAPE

Trooper Bushnell filmed the entire event at the roadside on December 14th, beginning at 2:45 and ending at 4:15 p.m. Bushnell removed the video tape from the locked tape player in the trunk of his patrol car on the evening of December 14th. Three days later, on December 17th, Bushnell reinserted the tape into his patrol car video camera, viewed the tape, and took notes to prepare his report. While the tape was in the video camera on the 17th, the camera somehow switched on and taped over thirty-nine minutes of the events of December 14th. Bushnell testified that he did not intentionally record over the videotape.

## E. DISTRICT COURT'S RULING

Defendants moved to suppress the evidence seized from their car, contending that Trooper Bushnell: (1) did not have reasonable suspicion to stop their car; (2) made a pretextual stop; (3) unlawfully detained Defendants beyond the scope of a routine traffic stop; and (4) did not have probable cause to search the trunk of Defendants' car. Defendants also moved to dismiss the indictment, maintaining that the government purposefully destroyed exculpatory evidence when Trooper Bushnell intentionally or in bad faith recorded over portions of the videotaped events of December 14, 1993.

In July and August 1994, the district court held hearings on Defendants' motions to suppress and dismiss. Following the hearings, the district court concluded that Trooper Bushnell: (1) had reasonable suspicion to stop Defendants' vehicle when he observed the vehicle drift twice into the emergency lane; (2) did not make a pretextual stop; (3)

did not unlawfully detain Defendants beyond the scope of a routine traffic stop;[1] and (4) had probable cause to search the trunk of Defendants' car when he smelled burned marijuana in the car and found contraband on Sorenson. The court accordingly denied Defendants' motions to suppress.

The district court also concluded nothing in the record demonstrated Trooper Bushnell purposefully altered the video tape, or erased it in bad faith. The court further noted that "it seems highly unlikely that the missing portion of video tape could exculpate defendants in any meaningful way." As a result, the court concluded that "Officer Bushnell's sloppy handling of evidence or inadvertence" did not rise to the level of a due process violation, and therefore did not warrant dismissal of the indictment. The court therefore denied Defendants' motions to dismiss.

Defendant Sorenson pleaded guilty to Count One of the indictment and Defendant Parker pleaded guilty to both counts. The district court sentenced Defendant Sorenson to 30 months imprisonment and Defendant Parker to 123 months imprisonment. This appeal followed.

## III.

### A.

◼ On appeal, Defendants first contend that the district court erred in denying their motions to suppress because: (1) Trooper Bushnell lacked reasonable suspicion to stop them, and (2) the stop was a mere pretext for a search for drugs. Specifically, Defendants contend that: (1) Trooper Bushnell lacked reasonable suspicion to stop them based only on observing their vehicle drift into the emergency lane; (2) Defendants reasonably pulled over to the emergency lane because Utah law requires vehicles to move to the right when approached from behind by a police vehicle using an audible or visual signal;[2] and (3) Trooper Bushnell stopped their

---

1. The district court specifically focused on the detention of a co-Defendant, Charity Olson, in its order. The court concluded broadly, however, that Trooper Bushnell had reasonable suspicion to detain Defendants and that the detention was therefore lawful. Defendants Sorenson and Par-

ker do not challenge the district court's detention ruling on appeal. The district court's resolution of this issue therefore stands. *United States v. Cook*, 997 F.2d 1312, 1316 (10th Cir.1993).

2. Under Utah Code Ann. § 41–6–76:

car under the pretext of a traffic violation so that he could perform an unrelated search of the vehicle for drugs. We disagree.

■ "In reviewing the denial of a motion to suppress, the district court's findings of fact must be accepted unless they are clearly erroneous; and the evidence will be considered in the light most favorable to the ruling." *United States v. Nicholson*, 17 F.3d 1294, 1297 (10th Cir.1994). "The ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo." *United States v. Fernandez*, 18 F.3d 874, 876 (10th Cir.1994).

■ Our recent en banc pronouncement in *United States v. Botero-Ospina*, 71 F.3d 783 (10th Cir.1995) controls Defendants' contentions that Trooper Bushnell lacked reasonable suspicion to stop their car and that the stop was pretextual. In *Botero-Ospina*, we considered whether we should continue to utilize the "would" or "usual police practices" standard set forth in *United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988), *overruled in part*, 71 F.3d 783 (10th Cir. 1995), for analyzing the constitutionality of traffic stops or adopt a different standard. We concluded the *Guzman* standard was unworkable, overruled that standard, and adopted a new test for determining the constitutionality of traffic stops under the Fourth Amendment: "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Botero-Ospina*, 71 F.3d at 787. Under our *Botero-Ospina* test, therefore, an initial stop is constitutionally valid if the officer had reasonable suspicion to believe that the defendant violated a traffic or equipment regulation. *Id.* It is irrelevant whether: (1) " 'the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop' "; and (2) "the officer may have

had other subjective motives for stopping the vehicle." *Id.* (quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994)).

We conclude Trooper Bushnell had reasonable suspicion to stop Defendants' car under *Botero-Ospina*. Trooper Bushnell observed Defendants drift twice out of their lane of travel and into the Interstate 15 emergency lane for approximately 200 hundred feet. Trooper Bushnell thereby observed Defendants commit a traffic violation under Utah law. *See* Utah Code Ann. § 41-6-61(1) ("A vehicle shall be operated as nearly as practical entirely within a single lane."); Utah Code Ann. § 41-6-69(1)(a) ("A person may not turn a vehicle or move right or left upon a roadway or change lanes until ... an appropriate signal has been given."). Once Trooper Bushnell observed Defendants commit a traffic violation, he had reasonable suspicion to stop Defendants' car. *Botero-Ospina*, 71 F.3d at 787. Moreover, contrary to Defendants' contentions, Utah Code Ann. § 41-6-76 is not implicated because Trooper Bushnell did not have his audible or visual signals on when Defendants weaved into the emergency lane. *See* Utah Code Ann. § 41-6-76 (operator of a vehicle shall move to the right-hand edge or curb of the highway "[u]pon the immediate approach of an authorized emergency vehicle *using audible or visual signals*.") (emphasis added). As a result, we hold Trooper Bushnell had reasonable suspicion to stop Defendants' car. It is therefore irrelevant to the validity of the initial stop whether Trooper Bushnell may have had subjective motivations for the stop. *Botero-Ospina*, 71 F.3d at 787.

**B.**

■ Defendants next contend the district court erred by denying their motions to

---

(1) Upon the immediate approach of an authorized emergency vehicle using audible or visual signals ... or of a peace officer vehicle lawfully using an audible or visual signal, the operator of every other vehicle shall yield the right-of-way and immediately move to a posi-

tion parallel to, and as close as possible to, the right-hand edge or curb of the highway, clear of any intersection and shall stop and remain there until the authorized emergency vehicle has passed, except when otherwise directed by a peace officer.

suppress because Trooper Bushnell did not have probable cause to search the trunk of their car. Specifically, Defendants argue that: (1) "it is questionable" whether Bushnell and Mangleson found "physical evidence of burnt marijuana" before they searched the trunk, and (2) an officer does not obtain probable cause to search the trunk of a vehicle by merely smelling marijuana in the passenger compartment and finding contraband on an occupant of the vehicle. We review the district court's findings of fact for clear error, *Nicholson,* 17 F.3d at 1297, and the court's ultimate determination of reasonableness under the Fourth Amendment de novo. *Fernandez,* 18 F.3d at 876.

■ An officer has probable cause to search a car "if, under the 'totality of the circumstances' there is a 'fair probability' that the car contains contraband or evidence." *United States v. Nielsen,* 9 F.3d 1487, 1489–90 (10th Cir.1993) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). If an officer smells marijuana in the passenger compartment of a vehicle, he has probable cause to search the passenger compartment. *Id.* at 1491; *United States v. Loucks,* 806 F.2d 208, 209–10 n. 1 (10th Cir.1986). The odor of marijuana in the passenger compartment of a vehicle does not, however, standing alone, establish probable cause to search the trunk of the vehicle. *Nielsen,* 9 F.3d at 1491. Rather, an officer obtains probable cause to search the trunk of a vehicle once he smells marijuana in the passenger compartment *and* finds corroborating evidence of contraband. *Compare Loucks,* 806 F.2d at 210–11 (Wyoming State Highway Patrol officer had probable cause to search the trunk of the defendant's car when he smelled and found marijuana in the passenger compartment of the car) and *United States v. Ashby,* 864 F.2d 690, 692 (10th Cir.1988) (New Mexico State Police officer had probable cause to search the trunk of the defendant's car when he smelled and observed marijuana in the car), *cert. denied,* 494 U.S. 1070, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990) *with Nielsen,* 9 F.3d at 1491 (Although Utah State Highway patrolman smelled marijuana in the passenger compartment of a vehicle, he did not have probable cause to search the trunk because he found no corroborating evidence of contraband). Once probable cause to search is established, the officer may search the entire vehicle, including the trunk and all containers therein that might contain contraband. *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982); *Loucks,* 806 F.2d at 210–11.

■ Applying these principles, we conclude Trooper Bushnell had probable cause to search the trunk of Defendants' car when he smelled burned marijuana in the car and found corroborating evidence of contraband on Defendant Sorenson. Once Troopers Bushnell and Mangleson smelled marijuana in the car, they had probable cause to search the passenger compartment. *Nielsen,* 9 F.3d at 1491; *Loucks,* 806 F.2d at 209–10 n. 1. When the troopers searched the passenger compartment of the car, they found a 9 millimeter firearm, which gave them reason to conduct a protective pat down of Sorenson to search for weapons. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). When Trooper Bushnell frisked Sorenson, he found the rolled-up dollar bill with white powder residue and the marijuana cigarette. The district court specifically found that both Troopers Bushnell and Mangleson saw the rolled-up dollar bill containing white powder residue and the marijuana cigarette *before* they searched the trunk of the car. Based on our review of the record, we cannot say that the court's finding is clearly erroneous. Having found corroborating evidence of contraband, the officers acquired probable cause to search the entire car, including the trunk and any containers therein that might contain contraband. *Ross,* 456 U.S. at 825, 102 S.Ct. at 2173; *Loucks,* 806 F.2d at 210–11.

Defendants maintain, however, that corroborating evidence of contraband found on an occupant of a vehicle does not establish probable cause to search the trunk in the same way as does the finding of evidence in

the passenger compartment of the vehicle. The district court rejected this argument:

> Followed to its logical conclusion, defendants' reasoning would create a rule in which the expectation of privacy in the trunk of a car varies depending on whether the driver places the contraband in his pockets instead of placing the contraband elsewhere in the passenger compartment. Fourth Amendment protections against unreasonable search and seizure cannot fluctuate on the basis of such arbitrary and nonsensical distinctions.

We agree with the reasoning of the district court. Accordingly, we hold that Trooper Bushnell had probable cause to search the trunk of Defendants' vehicle when he smelled marijuana in the passenger compartment of the vehicle and found corroborating evidence of contraband on Defendant Sorenson.[3]

### C.

▮ Defendants last assert that the district court erred by denying their motions to dismiss. Specifically, Defendants argue that Trooper Bushnell purposefully recorded over a portion of the video tape of the traffic stop that might have exculpated Defendants, and that such bad faith conduct warrants dismissal of the indictment. We review the district court's determination that the government did not in bad faith destroy potentially exculpatory evidence for clear error. *United States v. Bohl,* 25 F.3d 904, 909 (10th Cir.1994); *United States v. Richard,* 969 F.2d 849, 853 (10th Cir.), *cert. denied,* 506 U.S. 887, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992).

▮ Under the Due Process clause of the Fourteenth Amendment, the Supreme Court has developed " 'what might loosely be called the area of constitutionally guaranteed access to evidence.' " *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81

L.Ed.2d 413 (1984) (quoting *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)). The Court has specified that, to the extent the Constitution imposes a duty upon the government to preserve evidence, "that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense"—*i.e.,* evidence that is constitutionally material. *Id.* at 488–89, 104 S.Ct. at 2533–34. To be constitutionally material, evidence must: (1) "possess an exculpatory value that was apparent [to the police] before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534. The mere possibility that lost or destroyed evidence could have exculpated a defendant is not sufficient to satisfy *Trombetta*'s requirement that the exculpatory value be "apparent" to the police before destruction. *Arizona v. Youngblood,* 488 U.S. 51, 56 n. *, 109 S.Ct. 333, 336 n. *, 102 L.Ed.2d 281 (1988). Additionally, "if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence." *Bohl,* 25 F.3d at 910 (citing *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337). "[M]ere negligence on the government's part in failing to preserve such evidence is inadequate for a showing of bad faith." *Id.* at 912.

▮ Applying these principles, we conclude Defendants have not demonstrated that the video taped evidence was constitutionally material under *Trombetta.* The district court found that it "is far from 'apparent' " that the video taped evidence would have exculpated Defendants in light of the "strong evidence before the court indicating probable cause to search the entire vehicle." We can-

---

**3.** Because the district court concluded that Trooper Bushnell had probable cause to search the trunk of Defendants' car, it did not address the scope or legitimacy of any consent to a vehicle search given by Defendants. We likewise need not address the consent issue. Additional-

ly, because we conclude Trooper Bushnell had probable cause to search the trunk of Defendants' car, we do not address the government's alternative argument that Sorenson lacked standing to challenge the search.

not say this finding was clearly erroneous. Trooper Bushnell's testimony established that he: (1) had reasonable suspicion to stop Defendant's vehicle when it twice drifted into the emergency lane, and (2) had probable cause to search the trunk of the car after smelling marijuana in the passenger compartment and finding corroborating evidence of contraband on Defendant Sorenson. As a result, the only way the erased video tape evidence could be "apparently" exculpatory is if it demonstrated that the events did not occur as Trooper Bushnell related, that is, that he was lying about the events—*i.e.,* about finding the contraband prior to conducting the search. Whether Trooper Bushnell was telling the truth was essentially a question of credibility for the district court. The district court believed Trooper Bushnell and we have no basis to question the court's credibility judgment.

Even if one assumed that the video taped evidence might have been exculpatory in the instant case, Defendants have not demonstrated that the video taped evidence is "of such a nature" that they "would be unable to obtain comparable evidence by other reasonably available means." *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534. Along with Trooper Sorenson, Trooper Mangleson and Defendants participated in the recorded events. Hence, Defendants could have called Trooper Mangleson to adduce what the missing video tape evidence showed. If Defendants had a different version of the events than that related by Trooper Bushnell, Defendants could have taken the stand and testified at the suppression hearing. Accordingly, Defendants had a readily available source to replace the missing video tape—Trooper Bushnell's testimony, Trooper Mangleson's testimony and their own testimony of the events. As a result, Defendants have not shown that the missing video taped evidence was constitutionally material under *Trombetta.*

 Defendants are further required to demonstrate bad faith on the part of the government in destroying the evidence because the exculpatory value of the missing video tape is indeterminate and "potentially useful" at best. *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337; *Bohl,* 25 F.3d at 910. Defendants have not done so. The district court found that the record contained no evidence that Trooper Bushnell purposefully altered the video tape, or that the erasure was motivated by bad faith. We conclude this finding is not clearly erroneous. Defendants' contentions that Trooper Bushnell knew his patrol car video camera would inadvertently switch on occasionally and that with that knowledge he should not have left the video tape in the camera on December 17th, at most establish that Trooper Bushnell was negligent in preserving the video taped evidence. Mere negligence is not sufficient to establish that Trooper Bushnell acted in bad faith. *See Bohl,* 25 F.3d at 912; *see also Montgomery v. Greer,* 956 F.2d 677, 681 (7th Cir.) (accidental loss of photographs "unprofessional" and negligent, but "mere negligence, without more, does not amount to a constitutional violation."), *cert. denied,* 506 U.S. 972, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992). Accordingly, we hold that Defendants have not demonstrated that the video taped evidence was constitutionally material under *Trombetta* or that Trooper Bushnell acted in bad faith in recording over the video tape. We therefore conclude that the district court did not err in denying Defendants' motions to dismiss the indictment.

AFFIRMED.