82 F.3d 427
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellant,
v.
Dennis Reid EIDSON, Defendant-Appellee.
 No. 94-5155.
 United States Court of Appeals, Tenth Circuit.
 April 11, 1996.
 
 Before PORFILIO, ANDERSON, and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 BALDOCK, Circuit Judge.
 
 
 1
 The district court granted Defendant Dennis Reid Eidson's motion to suppress evidence flowing from a traffic stop when it concluded the stop was pretextual under United States v. Guzman, 864 F.2d 1512 (10th Cir.1988), overruled in part by United States v. Botero-Ospina, 71 F.3d 783 (10th Cir.1995) (en banc). The government appealed. After oral argument in January 1995, we abated this case pending en banc consideration of Guzman in Botero-Ospina. We now apply Botero-Ospina to the instant case and reverse the district court's grant of Defendant's motion to suppress.
 
 I.
 A. Background Investigation
 
 2
 In October 1993, an informant told Tulsa County Deputy Sheriff Dale Eberle, a full-time narcotics investigator, that "suspicious things were going on" at a commercial building located at 4137 South 87th East Avenue in Tulsa, Oklahoma. The informant divulged that a man would never use the dumpster behind the building to dump his trash, but, instead, always hauled it away. Deputy Eberle decided to surveil the building. On several occasions, he noticed water leaking from the building's east side door. He also noticed that a man would drive up in a red Mercury Zephyr, and enter and exit the building, usually at night. Based on this information, his experience, and drug recognition training with the Drug Enforcement Administration, Tulsa Police Department, and Sheriff's Department, Deputy Eberle concluded that some type of clandestine operation was occurring inside the building.
 
 
 3
 Deputy Eberle continued his investigation in late 1993 and early 1994, and learned that Defendant was responsible for paying the water bills for the building. Deputy Eberle ran a driver's license check, and discovered that Defendant's driver's license was suspended. Deputy Eberle could not identify, however, whether the man he observed at the building was Defendant.
 
 
 4
 In February 1994, the informant again contacted Eberle. The informant told Eberle that a man had backed up a van to the building's front door and was loading it with "real-light looking," large trash bags. Deputy Eberle drove to the building, and observed the man exit the building, lock the door, get in the van, and drive away.
 
 
 5
 Deputy Eberle followed the van and saw it fail to signal when it made a right-hand turn. Deputy Eberle decided to stop the van. Because he had not worked a traffic shift in eight years, however, he asked Deputy Sheriff Jimmy Valentine to stop the van for the traffic violation. Eberle followed the van while he waited for Deputy Valentine.
 
 B. Traffic Stop and Evidence Seizure
 
 6
 Shortly thereafter, Deputy Valentine arrived and followed Deputy Eberle and the van. Deputy Valentine observed the van change lanes and "weav[e] in and out of traffic" without signaling. Deputy Valentine activated his emergency equipment and stopped the van. Deputy Eberle pulled in behind Deputy Valentine. Valentine approached the van and asked the man for his license. The license indicated the man was Defendant. Valentine ran a computer check and discovered Defendant's license was suspended. Valentine removed Defendant from the van, handcuffed him, and arrested him for driving under suspension. Valentine discovered a pistol in Defendant's jacket pocket. Valentine then inventoried the van and found trash bags with potting soil and marijuana leaves.
 
 
 7
 Based upon this information, Deputy Eberle contacted the sheriff's K-9 officer and told him to take the drug-sniffing dog to the building. The dog alerted on the back of the building. Deputy Eberle then submitted an affidavit for a search warrant to the state district court. The court issued the warrant. Deputy Eberle and other officers searched the building, found, and seized 1,760 marijuana plants. A grand jury indicted Defendant for manufacturing by production 1,000 or more marijuana plants, 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), and using a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1).
 
 C. Motion to Suppress and Hearing
 
 8
 Defendant moved to suppress the marijuana and firearm. Defendant asserted that the deputies' initial stop of the van was unconstitutional because it was pretextual and unsupported by probable cause. Defendant argued, therefore, that all evidence flowing from the initial invalid traffic stop must be suppressed as fruit of the poisonous tree.
 
 
 9
 The government responded that the deputies obtained reasonable suspicion or probable cause to stop Defendant when they saw him, inter alia, fail to signal. The government contended that the initial stop was therefore constitutionally valid. The government asserted that the searches and seizures following the traffic stop were accordingly valid, and requested the court deny Defendant's motion to suppress.
 
 
 10
 The court conducted an evidentiary hearing. Based upon the evidence, and applying Guzman, the court concluded that the deputies' initial stop of Defendant's van was pretextual: "Government agents used a legal justification for a traffic stop as a pretext for a search of defendant's van." The court therefore granted Defendant's motion and suppressed the evidence seized. The government appealed.
 
 II.
 
 11
 On appeal, the government contends that the district court erred in granting Defendant's motion to suppress. Specifically, the government maintains that under the totality of the circumstances, the deputies had reasonable suspicion to stop Defendant. The government argues, therefore, that the initial stop was constitutionally valid. We agree. We review the district court's factual findings for clear error, United States v. McSwain, 29 F.3d 558, 560 (10th Cir.1994), and its ultimate determination of reasonableness under the Fourth Amendment de novo, United States v. Parker, 72 F.3d 1444, 1449 (10th Cir.1995).
 
 
 12
 During the pendency of this appeal, we considered en banc whether we should continue to utilize the Guzman "usual police practices" test for analyzing the constitutionality of an initial traffic stop, or adopt a different standard. Botero-Ospina, 71 F.3d at 785. We concluded the Guzman test was unworkable, abandoned it, and adopted an objective, reasonable-suspicion test. Id. at 786-87. Under our Botero-Ospina test, "a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Id. at 787. "It is ... irrelevant that the officer may have had other subjective motives for stopping the vehicle." Id. "Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." Id. (quoting Delaware v. Prouse, 440 U.S. 648, 661 (1979)).
 
 
 13
 Applying Botero-Ospina to the instant case, we conclude the deputies had reasonable suspicion to stop Defendant's van. The deputies observed Defendant violate Oklahoma traffic laws by failing to signal at appropriate times. Okla. Stat. Tit. 47, § 11-604. Having observed Defendant violate "one of the multitude of applicable traffic and equipment regulations" of Oklahoma, the deputies thereby acquired reasonable suspicion to stop him. Botero-Ospina, 71 F.3d at 787. As a result, the stop is constitutionally valid, regardless whether the deputies had other, subjective motivations for making it. Id.
 
 III.
 
 14
 We hold that the deputies did not violate the Fourth Amendment by stopping Defendant in the instant case. As a result, we conclude the district court erred in granting Defendant's motion to suppress. Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.
 
 
 15
 REVERSED and REMANDED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3