**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 9 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PABLO VIDAL MARQUEZ, a/k/a
Pablo Marquez, Ricardo Arroyo,

    Defendant - Appellant.

No. 96-6202
(D.C. No. CR-95-149-L)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **LUCERO** and **MURPHY**, Circuit Judges.

On September 28, 1995, a police officer discovered 180 pounds of cocaine in a hidden panel underneath the bed of defendant's pickup truck. Defendant filed an unsuccessful suppression motion, challenging the initial traffic stop and subsequent search of his pickup. He then entered a conditional guilty plea to possession with intent to distribute cocaine, reserving the right to appeal the denial of his suppression motion. He argues on appeal that the initial stop was

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

unjustified and that the police officer exceeded the scope of the consent by dismantling the bed of his pickup. We affirm.

In reviewing the denial of a suppression motion, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. United States v. Bell, 892 F.2d 959, 965 (10th Cir. 1989). A factual finding is clearly erroneous if it lacks support from the record or if, after reviewing all the evidence, we are "left with a definite and firm conviction that a mistake has been made." LeMaire v. United States, 826 F.2d 949, 953 (10th Cir. 1987). We review the district court's determination of reasonableness de novo. United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995).

A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. Id. at 786. Because an ordinary traffic stop is a limited detention, we examine its constitutionality under the principles announced in Terry v. Ohio, 392 U.S. 1 (1968). See Botero-Ospina, 71 F.3d at 786. Such a "stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Id. at 787.

Defendant argues that Trooper Ross, the officer who pulled him over, lacked a reasonable basis for the stop. The circumstances surrounding the traffic

stop are documented in a video tape of the stop and in the transcript of the suppression hearing. Trooper Ross testified at the hearing that defendant's pickup caught his attention because it made "sort of a jerky movement" as Ross was passing the pickup. II R. at 14-16. Defendant then legally changed lanes, from the center to the right hand lane, which Trooper Ross thought might have been an attempt to distance himself from Ross's patrol car. Defendant drifted over to the right side of his lane and slowed down to between forty-five to fifty miles per hour in the fifty-five mile-an-hour zone. On three or four brief occasions, Ross observed the defendant's tires touch the lane line that divides the right lane from the shoulder. Ross decided to pull defendant over because these "lane violations," combined with defendant's slow, erratic and evasive driving, lead Ross to believe that defendant was possibly impaired.

It is not clear whether defendant violated Oklahoma law by briefly touching the lane line. Although Oklahoma law mandates that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane," 47 Okla. Stat. Ann. § 11-309(1) (1988), there are no reported decisions that treat a brief touching, as opposed to crossing, of the lane line as a violation of Oklahoma law. Cf. United States v. Gregory, 79 F.3d 973, 978 (10th Cir. 1996) (holding that, on a winding mountainous road, a single instance of crossing right lane line is not a violation of

Utah statute that requires vehicles to be operated "as nearly as practical entirely within a single lane . . . ." (quoting Utah Code Ann. § 41-6-61(1))).

Even if we assume that touching the lane line is not, in and of itself, a violation of Oklahoma law, we nevertheless agree with the district court that defendant's driving gave Trooper Ross sufficient reason to investigate for possible impairment. Although our review of the video tape does not reveal obvious indications of possible impairment, the district court evidently credited Trooper Ross, who testified that defendant, partly when he was "off camera," was swerving or jerking, driving below the speed limit, and hugging and touching the right lane line. Finding no clear error in the district court's factual determinations, we conclude that Ross had an objectively reasonable articulable suspicion that defendant was impaired. See United States v. Lloyd, 13 F.3d 1450, 1453 (10th Cir. 1994) ("Erratic driving supports an investigative stop to determine if the driver is intoxicated or to determine the reason for the erratic driving.").

Turning to defendant's second argument on appeal, we examine the scope of the consent he gave Trooper Ross to search the pickup. Trooper Ross asked defendant for permission to search after smelling marijuana on defendant's breath and the strong odor of cologne. Specifically, Ross asked whether defendant was transporting any illegal drugs or guns. Defendant said that he was not. Ross then

asked if he could "check." Defendant replied, "Sure." In searching the cab of the pickup, Ross found the butt of a marijuana cigarette in the ash tray. He then walked to the rear of the pickup, lowered the tailgate, and discovered that the bed was raised 4-5 inches. Ross arrested and handcuffed defendant. He also called for a drug dog. After the dog alerted to the pickup bed, Ross used a crowbar to pry open the false compartment underneath the pickup bed. The false compartment contained 180 pounds of cocaine.

Defendant does not object to the discovery of the marijuana cigarette. Rather, he complains about the discovery of the cocaine in a hidden compartment underneath the pickup bed. Defendant contends that by agreeing to the "check" of his vehicle, he gave only limited permission for a cursory inspection, which did not include permission for Trooper Ross to use a crow bar to pry into the hidden compartment.

We need not decide whether Trooper Ross exceeded the scope of defendant's consent by prying open the hidden compartment, because probable cause supported the warrantless inspection of the hidden compartment, even without consent. Before Ross pried open the compartment, he smelled marijuana and cologne, discovered the marijuana cigarette, and observed the unusually shallow truck bed. Although he might have proceeded to conduct a warrantless search of the hidden compartment at that point, see United States v. Parker, 72

F.3d 1444, 1450 (10th Cir. 1995), he chose to call for a drug dog. Clearly, after the dog alerted, there was probable cause to conduct a warrantless search of the entire pickup, including its hidden compartments. See United States v. Klinginsmith, 25 F.3d 1507, 1510 (10th Cir. 1994) (drug dog alone provides probable cause); see also United States v. Ross, 456 U.S. 798, 809 (1982) (warrantless search of automobile is reasonable if officer has probable cause to believe it contains contraband). Therefore, the search of the hidden compartment was constitutional, with or without defendant's consent. Klinginsmith, 25 F.3d at 1510.

AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge