**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                    Elisabeth A. Shumaker
Clerk                                                                      Chief Deputy Clerk

December 30, 1997

**TO:**   ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:**   96-2290, *United States v. Keiran Kennedy*
        Filed on December 3, 1997

Please be advised of the following correction to the captioned decision:

On page 2, first paragraph of the "Background" section, second sentence, line six, there exists a typographical error. The sentence refers to the point of departure as "from Flagstaff, New Mexico, to Chicago, Illinois; . . . ." The correct location for departure should read "from Flagstaff, Arizona, to Chicago, Illinois; . . . ."

Please make the appropriate correction to your copy of the opinion.

Very truly yours,

Patrick Fisher, Clerk

Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

KEIRAN GEORGE KENNEDY,

      Defendant-Appellee.

No. 96-2290

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-94-534-JP)**

Robert D. Kimball, Assistant United States Attorney, Albuquerque, New Mexico (John J. Kelly, United States Attorney, with him on the brief), for Plaintiff-Appellant.

Peter Schoenburg, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, LLP, Albuquerque, New Mexico, for Defendant-Appellee.

Before **ANDERSON, EBEL,** and **LUCERO**, Circuit Judges.

**EBEL**, Circuit Judge.

      Law enforcement officers seized over fifty pounds of marijuana from two

suitcases carried by Defendant-Appellee Kieran George Kennedy after obtaining a

search warrant based in part on a narcotics canine alert. Kennedy was indicted for possession with intent to distribute marijuana. The affidavit supporting the warrant described the drug dog as trained and certified to detect narcotics. However, the drug dog's handler had not maintained proper records of the dog's reliability nor conducted periodic field training as instructed by the agency that had certified the dog. Kennedy moved to suppress the marijuana, claiming that the failure to mention the handler's poor record keeping and field training in the affidavit constituted a reckless omission of a material fact sufficient to invalidate the warrant. The district court agreed and granted Kennedy's motion, relying on Franks v. Delaware, 438 U.S. 154 (1978). The government now appeals. We have jurisdiction under 18 U.S.C. § 3731. We reverse.

## BACKGROUND

On August 18, 1994, a confidential source contacted Drug Enforcement Administration Special Agent Kevin J. Small ("Small"), stationed in Albuquerque, New Mexico, regarding Kennedy's behavior. The source reported the following information: a man traveling under the name of Kennedy purchased a one-way sleeper car roomette ticket with a credit card the morning of departure from Flagstaff, Arizona, to Chicago, Illinois; the man spoke with a British or Australian accent; the man had at least two suitcases, one of which was large and gray; after purchasing the ticket, the man stayed in his parked car, avoided contact

with other passengers, and moved directly from his car to the train when it pulled in to the station for its brief stop. Most passengers wait in the station or on the train platform and mingle with other passengers. A law enforcement officer subsequently advised Small that Kennedy had left a rented car behind in Amtrak's Flagstaff parking lot and used a cellular phone for his reservation's callback number.

Based on this information, Small met the train when it arrived in Albuquerque later in the afternoon, accompanied by Albuquerque Police Detective Pat Castillo ("Castillo"). The attendant for defendant's sleeping car confirmed that a man fitting Kennedy's description had boarded the train in Flagstaff with a large suitcase stored in the sleeping car's common luggage area. The attendant identified a large gray American Tourister suitcase in the luggage area as Kennedy's bag. Small sniffed the bag. He noticed that the suitcase had a strong lemon scent that he believed to be consistent with deodorants or other substances used to mask the smell of narcotics. Castillo confirmed this observation.

Small called for Albuquerque Police Detective Rob Lujan ("Lujan"), the certified dog handler for the Albuquerque Police Department, and his dog Bobo. Small had worked with Bobo on ten to fifteen prior occasions. Bobo made an alert every time Small had worked with the dog, but two of those alerts turned out

to be false--no seizable amounts of contraband were found. Once Lujan and Bobo arrived, Small had them check the sleeping car's common luggage area. Bobo alerted to Kennedy's gray bag.[1]

Small then knocked on the door of Kennedy's roomette and announced that he was a law enforcement officer. Kennedy, who spoke with a British accent, opened the door and agreed to speak with Small. Small taped the conversation. Kennedy identified himself, confirmed that he boarded in Flagstaff, and stated that he was bound for New York by way of Chicago and then to London by air. When Small asked Kennedy if he had any baggage, Kennedy said that he had been given a large gray suitcase stored in the baggage compartment to "drop" to someone who would meet him on the train. Kennedy said that a man named Will (he did not remember the last name) had given him the bag. Kennedy denied knowledge of the contents of the bag, said it was not his, and added that he had not packed the bag. Kennedy also told Small that Will had given him a second, smaller bag, and pointed out one of the bags in his room.

---

[1] During oral argument, Kennedy's counsel stated that Small touched the bag when inspecting it on the train before Bobo alerted to the luggage. Counsel suggested that Bobo might have keyed off of Small's smell on the bag rather than alerting to the odor of marijuana. Although such evidence might be relevant in evaluating the reliability of the dog, the evidence in the record is inconclusive on this point. Bobo had not alerted to bags that Small had touched on several prior occasions, and the district court did not make any finding of fact that Small touched the bag in this case. As a result, we assume for the purpose of review that Small did not touch the suitcase prior to Bobo's alert.

Small arrested Kennedy and removed the bags from the train. Bobo then alerted to the smaller bag that had been seized from Kennedy's roomette. Small prepared a search warrant application for the bags, mentioning Bobo's alert to the suitcase and reciting Kennedy's story about his role as "courier" for the bags. The relevant portion of the search warrant application read as follows:

> Affiant requested Albuquerque Police Detective Rob Lujan and his canine "BOBO" to check the common luggage area of car 430. "BOBO" checked the luggage in the luggage area and he alerted to the gray large American Tourister hardsided suitcase. "BOBO" is a <u>certified narcotics canine</u> with the Albuquerque Police Department and is trained to alert to the odors associated with marijuana, Heroin, Cocaine, and/or Methamphetamine.

(emphasis added).[2]

---

[2] The search warrant application in its entirety read as follows:

On August 18, 1994 affiant was at the Amtrak Train Station in Albuquerque, New Mexico when Amtrak Train number 4 arrived from Los Angeles, CA. An Amtrak Train Attendant identified a grey [sic] large American Tourister hardsided suitcase sitting in the common luggage area as a suitcase belonging to George Kennedy in room B of car 430.

Affiant requested Albuquerque Police Detective Rob Lujan and his canine "BOBO" to check the common luggage area of car 430. "BOBO" checked the luggage in the luggage area and he alerted to the gray large American Tourister hardsided suitcase. "BOBO" is a certified narcotics canine with the Albuquerque Police Department and is trained to alert to the odors associated with marijuana, Heroin, Cocaine, and/or Methamphetamine.

Affiant went to room B of car 430 and knocked on the door. The person later later [sic] identified as George KENNEDY asked who it was. Affiant stated he was with the police department. KENNEDY opened the curtain and affiant showed KENNEDY his Drug Enforcement Administration credentials and stated he was a police officer and asked if he could talk to him. KENNEDY unlocked

(continued...)

Based on Small's affidavit, a magistrate judge issued the warrant. The large gray bag contained more than thirty pounds of marijuana, and the smaller bag held twenty pounds of marijuana for a combined total in excess of 58 pounds. Small also found $5,000 in cash in Kennedy's personal belongings. Kennedy was indicted for knowing possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(D).

---

[2](...continued)
the door and agreed to talk to the affiant.

After a short conversation about KENNEDY's travel affiant inquired if he had any luggage. KENNEDY stated he had "a case that somebody wanted him to drop." KENNEDY stated that a person was going to meet him on the train and he would give that person the suitcase. KENNEDY stated the suitcase was a big gray suitcase and it was downstairs and he did not have the key to it. KENNEDY added that he had another suitcase in his room that he was also supposed to give the the [sic] person on the train and the persons [sic] name was "WILL". The second suitcase KENNEDY pointed out in his room was a teal colored softsided American Tourister suitcase.

Affiant pursuant to the narcotics canine alert to the gray hardsided suitcase in the common luggage area and the statement by KENNEDY regarding the second suitcase also being given to a person named "WILL" affiant [sic] arrested KENNEDY. Affiant seized both suitcases [sic] Affiant had Det. Lujan and his canine "BOBO" check the teal colored suitcase after it was seized. "BOBO" alerted to the teal colored soft-sided American Tourister suitcase.

Det. Lujan andAPD [sic] Detective William Greigo transported the two (2) suitcases to the Albuquerque District Office of the Drug Enforcement Administration. Both suitcases have been in the affiants [sic] possession since that time.

Affiant knows the above personally or was told it by Det. Lujan.

Affiant respectfully request [sic] a Federal Search Warrant be issued for the two suitcases because there is probable cause to believe that they contain drugs/narcotics in violation of 21 USC 841.

Seeking to suppress the seized contraband, Kennedy initiated discovery proceedings regarding Bobo's training and history in the hope of showing that Bobo was so unreliable that the warrant should be invalidated.[3] The discovery process revealed that Bobo and Lujan had been trained as a team and certified by Global Training Academy ("Global") in San Antonio, Texas, in November, 1993. Bobo received a 96% success rating from Global. Global's manual instructed Lujan to keep proper records of Bobo's activities and periodically field train Bobo to ensure Bobo's continued reliability. Global's continued assurance of Bobo's accuracy depended on Lujan following these instructions.[4] Over time, if not properly monitored, a dog may fall out of its trained behavior and begin responding to a handler's cues rather than to actual detection of a narcotic odor. A drug dog will lose its effectiveness in the field and may revert to old, bad

---

[3] This is at least the second reported case involving the suppression of evidence seized as a result of an alert by Bobo. See United States v. Florez, 871 F. Supp. 1411 (D.N.M. 1994) (suppressing evidence obtained as a result of a search warrant predicated on an alert by Bobo).

[4] Global's training manual reminded a dog handler that "you are the key to the success of [Global's] training and to the continued success of your dog once you leave [Global]. If you fail to provide the proficiency training needed to maintain the dog's proficiency, and your's, then our efforts have been wasted . . . . The credibility and ability to conduct effective training is only as good as the records you maintain on your dog." Global did not, however, condition its certification on a handler's compliance with these directives, and the record does not indicate any procedure by which a dog's certification may be revoked if subsequent field training and record keeping is not maintained.

habits if not continually trained. Accurate record keeping is essential to insure the dog's reliability until the dog is recertified.

Lujan, however, ignored Global's directives. Lujan did not keep records of Bobo's field work. Lujan also field trained Bobo only sporadically, contrary to Global's instructions. The available records revealed that Bobo alerted 56 times from the November, 1993, certification up until August 18, 1994, the date of the incident in question.[5] He accurately alerted in 40 of those cases and falsely alerted in the remaining 16 (a 71.4% success rate).[6] Bobo was recertified by Global in September, 1994, one month after his alert to Kennedy's luggage, with a success rate of 96%.

Kennedy moved to suppress the marijuana seized from the bags. Kennedy argued that Lujan's failure to follow Global's instructions impermissibly tainted the magistrate judge's probable cause determination by fatally undermining the claim in the affidavit that Bobo was a trained and certified narcotics canine. The district court initially denied Kennedy's motion, although the court did find that Lujan had been reckless in failing to mention to Small his poor record-keeping

---

[5] Since Lujan did not keep accurate records, it is impossible to say with any degree of precision how many times Bobo had alerted since November, 1993.

[6] A false alert occurs when no seizable amounts of contraband are located during a search. However, a false alert does not mean necessarily that the dog alerted without detecting any odor of narcotics. Dogs are capable of detecting narcotics residue that may appear on money or clothing that has come in contact with drugs, even though no seizable quantity has been found.

and training habits and that the omission of those facts from the affidavit was significant. However, the court did not find that Lujan's recklessness tainted Small's affidavit and thus refused to invalidate the warrant. On Kennedy's motion to reconsider, however, the district court reversed course, holding that Lujan's recklessness could be imputed to Small. Consequently, the district court ruled to suppress the marijuana. The government now appeals pursuant to 18 U.S.C. § 3731.

## DISCUSSION

We find that the magistrate judge had sufficient probable cause to issue a warrant to search Kennedy's luggage. Though Lujan's training and record keeping were shoddy at best, we conclude that Small did not omit any material facts that would have altered the magistrate judge's probable cause determination by failing to mention Lujan's shortcomings. Had Small included all of the information revealed at the suppression hearing regarding Bobo's reliability and Lujan's sloppy conduct, a reasonable magistrate judge still would have issued the warrant.

We review de novo a district court's determination of reasonableness under the Fourth Amendment. United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996). We review the reasonableness of a warrant to determine "whether the issuing magistrate . . . had a 'substantial basis' for finding probable cause," giving "great deference" to the issuing magistrate judge's decision. United States v.

Cusumano, 83 F.3d 1247, 1250 (10th Cir. 1996) (en banc) (citation omitted). We review a district court's factual findings in ruling on a suppression motion for clear error. Hernandez, 93 F.3d at 1498. The government does not contest the district court's factual findings and we find adequate evidence in the record to support those findings. Thus, we adopt those findings as true for the purpose of review. We particularly agree that Lujan's conduct was careless and note that under different circumstances such carelessness might be sufficient to overturn a search warrant. However, we do not find that we should invalidate the warrant in this case.

The district court based its suppression ruling on the analysis set forth in Franks v. Delaware, 438 U.S. 154 (1978). Under Franks, a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause. Id. at 155-56; see also Stewart v. Donges, 915 F.2d 572, 581-82 (10th Cir. 1990). If the defendant establishes at the evidentiary hearing by a preponderance of the evidence that the false statement was included in the affidavit by the affiant "knowingly and intentionally, or with reckless disregard for the truth," and the false statement was "necessary to the finding of probable cause," then the Supreme Court has ruled that "the search

warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Franks, 438 U.S. at 155-56; see also Stewart, 915 F.2d at 581. In addition, we have ruled that the standards of "deliberate falsehood" and "reckless disregard" set forth in Franks apply "to material omissions, as well as affirmative falsehoods." Stewart, 915 F.2d at 582 (citations omitted).

Under this line of reasoning, the district court concluded that Lujan's failure to inform Small of his poor record keeping constituted a reckless omission of material facts. The district court then imputed Lujan's recklessness to Small relying on United States v. DeLeon, 979 F.2d 761, 764 (9th Cir. 1992) ("A deliberate or reckless omission [of information incorporated into an affidavit] by a government official who is not the affiant can be the basis for a Franks suppression"), and Franks, 438 U.S. at 164 n.6 ("police [can] not insulate one officer's deliberate misstatements merely by relaying it through an officer/affiant personally ignorant of its falsity."). Specifically, the district court found that the following additional information should have been provided in the affidavit: (1) Although not Bobo's handler, Small had worked with Bobo on 10-15 prior occasions and Bobo had alerted in two instances where no seizable amounts of contraband were found; (2) Bobo had been trained and certified by Global during November, 1993, with a passing rate of 96%; (3) Global mandated that Lujan

keep daily records of Bobo's activities and regularly field train Bobo for the dog to remain reliable and certified; (4) Lujan did not keep such records and only sporadically field trained Bobo after the November, 1993 certification; (5) Lujan believed Bobo was reliable but could not provide "even close to reliable statistics about Bobo's actual performance." The district court found that had this information been provided to the magistrate judge, no warrant would have been issued.

We agree with the decision of the district court to hold the government accountable for statements made not only by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit. See United States v. Wapnick, 60 F.3d 948, 956 (2nd Cir. 1995), cert. denied, 116 S. Ct. 2556 (1996); DeLeon, 979 F.2d at 764; United States v. Calisto, 838 F.2d 711, 714 (3rd Cir. 1988); United States v. Pritchard, 745 F.2d 1112, 1118 (7th Cir. 1984). However, because we conclude that none of the "omitted" information would have altered the magistrate judge's decision in this case, we disagree with the district court's ruling invalidating the search warrant.

As a general rule, a search warrant based on a narcotics canine alert will be sufficient on its face if the affidavit states that the dog is trained and certified to detect narcotics. See United States v. Venema, 563 F.2d 1003, 1007 (10th Cir.

1977) (affidavit in support of a search warrant need not describe the drug-detecting dog's educational background and general qualifications with specificity to establish probable cause); United States v. Berry, 90 F.3d 148, 153 (6th Cir.) (search warrant application need not describe the particulars of a dog's training, reference to dog as a "drug sniffing or drug detecting dog" sufficient to support probable cause), cert. denied, 117 S. Ct. 497 (1996); United States v. Daniel, 982 F.2d 146, 151 n.7 (5th Cir. 1993) (rejecting argument that an affidavit must show how reliable a drug-detecting dog has been in the past in order to establish probable cause); United States v. Klein, 626 F.2d 22, 27 (7th Cir. 1980) (statement that dog graduated from training class and has proven reliable in detecting drugs on prior occasions sufficient to support probable cause). We decline to encumber the affidavit process by requiring affiants to include a complete history of a drug dog's reliability beyond the statement that the dog has been trained and certified to detect drugs.

Nevertheless, we agree with the district court that under Franks and Stewart a court may look behind a search warrant when the affiant intentionally or recklessly misleads the magistrate judge by making an affirmatively false statement or omits material information that would alter the magistrate judge's probable cause determination. This court has commented that "[A] dog alert might not give probable cause if the particular dog had a poor accuracy record."

United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir. 1993); see also United States v. Diaz, 25 F.3d 392, 393-94 (6th Cir. 1994) (analogizing a dog's alert to expert testimony under Fed. R. Ev. 702 that may be attacked on credibility grounds under the district court's discretion to hear evidence about a dog's training and reliability and expert testimony attacking the canine's performance).[7]

Under Franks and Stewart, a defendant must show that the affidavit either included affirmatively false statements or omitted material facts. We find that Kennedy failed to meet either of these burdens in this case. First, we do not find that Small's affidavit included any affirmatively false statements. The affidavit stated that Bobo was a "certified narcotics canine . . . trained to alert to the odors associated with marijuana." Nothing in the record indicates that Bobo had not been so trained and certified nor is there evidence that Global ever revoked or withdrew certification of a dog as a result of a dog handler's errors. Notably, the district court found only that the affidavit recklessly omitted material information, not that the affidavit contained any affirmative misstatements.

---

[7] The court in Diaz suggested that a finding by the trial court that a drug dog was unreliable would be necessary to show cause for suppressing evidence seized based on a drug sniff. 25 F.3d at 394. In this case, the district court never found that Bobo was in fact unreliable; instead the evidence showed that Bobo had been at least 70% reliable. The district court only found that had all the facts been known, the magistrate judge would not have found probable cause.

Second, we turn to whether the affidavit contained material omissions. The district court found that Lujan's failure to alert Small to his shortcomings in handling Bobo constituted a reckless omission of a material fact. However, in order to invalidate a warrant based on a reckless omission, the information excluded from the affidavit must be material to the magistrate judge's finding of probable cause. Stewart, 915 F.2d at 582-83. If the magistrate judge would not have altered his probable cause determination even if he had been presented with the omitted material, then the warrant should be upheld. Id. We conclude that none of the information omitted from the affidavit constituted a material fact that would have altered the magistrate judge's probable cause determination. As a result, we need not reach the issue of whether Lujan was reckless in withholding the information from Small.

Even if Small had presented to the magistrate judge all of the facts the district court felt should have been included in his affidavit, a reasonable magistrate judge still would have found probable cause to issue the search warrant. A magistrate judge's task in determining whether probable cause exists to support a search warrant "is simply to make a practical, common-sense decision whether, given all the facts and circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a

crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  The standard for probable cause only requires that the magistrate had a "'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing."  Id. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

This court has consistently held that probable cause can be based on alerts by trained dogs.  See United States v. Klinginsmith, 25 F.3d 1507, 1510 (10th Cir. 1994); United States v. Sukiz-Grado, 22 F.3d 1006, 1009 (10th Cir. 1994); Ludwig, 10 F.3d at 1527.  Other courts have reached the same conclusion.  See Berry, 90 F.3d at 153; United States v. Williams, 69 F.3d 27, 28 (5th Cir. 1995), cert. denied, 116 S. Ct. 1284 (1996); United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993) (per curiam).  In United States v. Wood, 915 F. Supp. 1126, 1136 n.2 (D. Kan. 1996), rev'd on other grounds, 106 F.3d 942 (10th Cir. 1997), the court suggested that "with a canine, the reliability should come from the fact that the dog is trained and annually certified to perform a physical skill.  When the annual certification process involves actual field testing and grading of the canine's drug-detection skills . . . the canine's reliability is sufficient for a probable cause determination absent some circumstance that justifies a more complete examination of the canine's skill and performance."

- 16 -

Although Lujan's poor records might justify a further examination of Bobo's performance in the context of a motion to suppress, the further investigation actually undertaken by the district court produced evidence that Bobo in fact consistently performed well enough to support a probable cause finding. None of the additional information that the district court thought should have been included in the warrant application would have suggested that Bobo was unreliable. In fact, the additional information suggested the opposite. The evidence indicated that Bobo correctly alerted 71% of the time in those instances where records were kept and that on those occasions where Bobo worked with Small, the dog had at least an 80% accuracy rate. We find that a 70-80% success rate meets the liberal standard for probable cause established in Gates.

Kennedy argues that the magistrate judge would have no real basis on which to base a probable cause determination because the records that did exist were inadequate. We disagree. According to Kennedy, Lujan should have admitted that he did not keep proper records, did not adopt Global's recommended training regimen, and could not provide "even close to reliable statistics about Bobo's actual performance." However, Small also would have been able to inform the magistrate judge that Bobo had an 80% success rate working with Small and a 71% success rate based on the records that were kept by other

officers. We conclude that this information would not have altered the magistrate judge's probable cause determination.[8]

Kennedy suggests that if the warrant is upheld on appeal, Lujan will be rewarded for his carelessness. But, of course, that is not the case. The affidavit for the search warrant undoubtedly would have been stronger if Lujan had properly maintained field training and records on Bobo and if Small had been able to include those facts in the affidavit. We hold only that, even assuming that Lujan's carelessness had been disclosed in the affidavit, the affidavit would have been sufficient to establish probable cause, especially given the other facts in the affidavit such as Kennedy's disavowal of ownership of the bag and his story about dropping the bag for an unknown third party that supported the magistrate judge's decision.[9]

We conclude that the district court erred by ruling that Small's failure to mention Lujan's sloppy record keeping and inadequate field training in the affidavit constituted the omission of a material fact under Franks and Stewart.

[8] We express no opinion as to whether or not there may be circumstances in which record keeping in some form, under some circumstances, may be relevant as one of the factors to be considered.

[9] We note that Kennedy likely abandoned any expectation of privacy in the suitcases required to support his challenge to the search once he disavowed ownership of the bag. See United States v. Williams, 113 F.3d 1155, 1161-62 (10th Cir. 1997). Nevertheless, because neither party raised the expectation of privacy issue and because we reverse the district court on other grounds, we do not address the issue on appeal.

Therefore, we REVERSE the district court's suppression order, and REMAND for further proceedings consistent with this opinion.