**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 13, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERIC NELSON BERTRAM,

Defendant-Appellant.

No. 07-7087
(D.C. No. 6:07-CR-00010-JHP-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **ANDERSON**, Circuit Judges.

Following a jury trial, defendant-appellant Eric Bertram was convicted for

being a felon in possession of firearms under 18 U.S.C. § 922(g)(1) and 18 U.S.C.

§ 924(a)(2), and sentenced to a fifty-one month term of imprisonment. His

conviction arose from his arrest on September 20, 2006, after a drug-detection

canine alerted to his vehicle following a stop for speeding. During the subsequent

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

search of his person and vehicle, two handguns were found, one on the car floor-board and one in Mr. Bertram's pocket.

On appeal, Mr. Bertram challenges his conviction and sentence, raising two points of district court error. He first argues that the district court erred in denying his motion to suppress the firearms evidence, arguing that there was no probable cause for the search because the officers were aware the drug-detection canine was unreliable. His second argument is that the district court erred in admitting certain records of his prior felony convictions over his objection that those records were not properly authenticated.

Having jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we reject his challenge and affirm his conviction and sentence.

I.

Mr. Bertram first argues the district court erred in denying his motion to suppress the firearms evidence. He argues that the suppression hearing showed that the canine in question, named Taz, had serious health issues and that these issues impacted its ability to properly sniff and alert, resulting in an unacceptable number of mistakes both in training and in the field.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Taz's sniffing around Mr. Bertram's car was not a search subject to the Fourth Amendment. *See United States v. Ludwig*, 10 F.3d 1523, 1527 (10th Cir. 1993). While the officers search of his car was clearly a search requiring probable cause, "[t]his court has consistently held that probable cause can be based on alerts by trained dogs." *United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997). But, "[t]his court has [also] commented that [a] dog alert might not give probable cause if the particular dog had a poor accuracy record." *Id*. at 1377 (quotation omitted). As we have recently recognized in *United States v. Clarkson*, No. 08-4054, slip op. at 16 (10th Cir. January 6, 2009), the touchstone in this type of case is the reliability of the drug canine's alert, which is normally, though not exclusively, established by presenting evidence regarding the canine's training and certification. "A party seeking to suppress evidence bears the burden of proving the dog is unqualified." *Id*. at 13.

Here, the magistrate judge, in his report and recommendation regarding Mr. Bertram's motion to suppress, found that Taz and his handler practiced drug detection regularly and were fully trained and certified on the date of Mr. Bertram's arrest. Although the magistrate judge recognized that "[s]uch evidence

is typically satisfactory proof of reliability in detecting narcotics," R., Vol. I, Doc. 50 at 7, he went on to considered Taz's actual performance in the field. The magistrate judge found that, including the false alert leading to Mr. Bertram's arrest, Taz had three false alerts in the field out of twenty-five total alerts in the two and one-half years leading up to that arrest, for an eighty-eight percent success rate. The magistrate judge therefore found "that the drug dog was reliable, and that his alert to [Mr. Bertram's] vehicle provided probable cause for a search." *Id*. The district court thereafter denied the motion to suppress, adopting the magistrate judge's report and recommendation as the findings and order of the court.

Mr. Bertram argues that the district court erred in denying his motion. He claims that "[t]he full record shows that between February 15, 2006 and September 20, 2006, the canine was 6 for 11, or 54%." Aplt. Br. at 15.

> In reviewing the district court's denial of a motion to suppress, this court considers the evidence in the light most favorable to the government. This court must accept the district court's factual findings unless those findings are clearly erroneous. The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law reviewed de novo.

*United States v. Reeves*, 524 F.3d 1161, 1165 (10th Cir. 2008) (citations omitted).

We first note that although the record clearly shows that Taz suffered from a degenerative health condition that eventually resulted in his being put to sleep a few months after Mr. Bertram's arrest, there was no evidence presented showing

that these health problems would adversely affect Taz's ability to detect narcotics or alert his handler of the presence of narcotics. In fact, Taz's handler testified that the canine's physical problems had no effect on his sense of smell.

As to Mr. Bertram's argument that Taz had only a fifty-four percent success rate detecting drugs between February 15, 2006 and September 20, 2006, the record does not support this contention. In the original motion to suppress, prepared by counsel before Mr. Bertram decided to proceed pro se, counsel generally argued that Taz had a record of false alerts. The prosecution attached to its response a summary of the drug-detection activity of Taz and his handler. As noted above, the magistrate judge found that Taz had an eighty-eight percent success rate in the field.

To support his argument on appeal that Taz had five errors between February 15, 2006, and September 20, 2006, Mr. Bertram's appellate counsel cites only to his client's pro se motion for a new suppression hearing filed in the district court. That motion, in turn, contained no evidentiary support for its contention that Taz had a fifty-four percent success rate during the seven-month period prior to his arrest.

It appears that in calculating this figure, Mr. Bertram considered not only Taz's performance in the field, but also his training performance. The records in question show three "change of behavior – no narcotics located" incidents for Taz in the field on February 15, 2005; March 12, 2006; and September 20, 2006

-5-

(which was the date of Mr. Bertram's arrest). R., vol. I, doc. 38, attach. B at 4-5.

There was also a "change of behavior on clean vehicle" incident in training March 21, 2006. *Id*. at 5. Finally, on March 29, 2006, the records show "3 hides, 3 finds (1 after initial miss)." *Id*. These are the five alleged errors to which Mr. Bertram refers. *See id*., doc. 98 at 4.

But during the same period of time, Taz made numerous successful indications of the presence of narcotics. The records show on February 23, 2006: "5 hides, 5 finds"; on February 26, 2006: alert in the field–marijuana found; on March 5, 2006, alert in the field–marijuana found; on March 7, 2006: "2 hides, 2 finds"; on March 20, 2006: "3 hides, 3 finds"; on March 21, 2006: "2 hides, 2 finds"; on March 26, 2006, alert in the field–marijuana found; on March 29, 2006: two successful finds in addition to the find after the initial miss; on April 3, 2006: alert in the field–drug paraphernalia found; on May 20, 2006: alert in the field–marijuana found; on May 22, 2006: alert in the field–marijuana found; on September 26, 2006: "2 hides, 2 finds." R., doc. 38, attach. B at 4-5. When these twenty-two successful efforts are considered with the five asserted errors, Taz's success ratio stands at eighty-one percent. Further, during that time period there were sixteen instances where Taz was asked to check a vehicle in the field and did not alert, including one instance on the day of Mr. Bertram's arrest. Although alerts in the field that ultimately reveal no discernible drugs are not necessarily

false alerts,[1] even if we accept that Taz had five false alerts on record, he was still a fully trained and certified drug-detection canine with a success rate above eighty percent.  This is sufficient to establish probable cause to search the vehicle.  *See Kennedy*, 131 F.3d at 1378 (holding that "a 70-80% success rate meets the liberal standard for probable cause" to issue a search warrant).[2]

---

[1]     We note that Taz's handler testified that he only considered a false alert to be where a handler ran a canine in an area where he or she knew for certain there had never been any narcotics and the canine alerted.  Certainly in the instances where Taz alerted in the field, but no discernible drugs were subsequently found by the human officers, it is possible that the dog was reacting to the scent of drugs that were no longer present.  In fact, in its response to the motion to suppress, the prosecution submitted the individual activity reports for Taz's two "false" alerts on February 15, 2006, and March 12, 2006.  The February 15 report shows that the driver of the car "said he had some friends in his car that may have been using drugs."  R., vol. I, doc. 38, attach. C at 2.  Similarly, the March 12 report stated that although no drugs were found, the occupants of the stopped vehicle were nervous, there were fabric softener sheets laying in the passenger area, three scented air fresheners hanging from the rear-view mirror with more in the glove box, a "Glade stickup" stuck on the dash-board, tool marks showing that various panels in the vehicle had been removed, and screws missing on the dash-board cover.  Id., attach. D at 2.  Thus, in both cases there was evidence suggesting that there might have been drugs in those vehicles at some point.

[2]     Mr. Bertram also makes a brief and conclusory argument that he had insufficient opportunity to review Taz's training records prior to the original suppression hearing.  He cites to no precedent in support of his argument and the only prejudice that he claims is an inability to more fully make to the district court the argument that has been rejected on appeal.  There is no question that Taz's reliability and health and their potential effect on probable cause were at issue at the hearing.  There is also no question that the magistrate judge had the training records in question before him and considered them in reaching his decision.  The magistrate judge also took a recess at the hearing specifically to allow Mr. Bertram to review those records.  Following the recess he was allowed to further question Taz's handler and made no complaint regarding a need for a more complete review.  We thus see no district court error.

II.

In his second point on appeal, Mr. Bertram argues the district court erred in overruling his objection to the admission of certain records from the United States Bureau of Prisons (BOP).  He makes the conclusory arguments that "the BOP records contained records from the State of Texas that were not certified and, therefore, not self-authenticating under Fed. R. Evid. 902."  Aplt. Br. at 17. Mr. Bertram argues that the records were also hearsay and should not have been admitted.  He argues that without those records there was insufficient evidence to show that he had a prior felony conviction and, therefore, that his conviction on Count One of the indictment, a conviction for being a felon in possession of firearms, must be reversed.

We review for an abuse of discretion the district court's admission of evidence over a defendant's objection.  *United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008), *petition for cert. filed* (U.S. Dec. 2, 2008) (No. 08-7595). "We cannot reverse a district court's ruling if it falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical."  *United States v. Smith*, 534 F.3d 1211, 1218 (10th Cir. 2008) (quotation omitted), *cert. denied*, 77 U.S.L.W. 3325 (U.S. Dec. 1, 2008) (No. 08-6960).

Mr. Bertram's counsel, although providing a transcript citation, does not specify which "records from the State of Texas" he is referring to, nor exactly

what he means in arguing that the documents "were not certified." *Id*. It appears that the documents at issues are commitment orders and an accompanying BOP certification that were part of the"penitentiary packet" submitted by the prosecution.[3] The government argues that admission was proper under Rule 902 of the Federal Rules of Evidence. *See United States v. Weiland*, 420 F.3d 1062, 1072-74 (9th Cir. 2005) (holding that documents in a "penitentiary packet" were self-authenticating under Rule 902(4) of the Federal Rules of Evidence).

Although it appears that admission was proper, we need not base our decision on that ground. Even if error occurred,

> [a] non-constitutional error, such as a decision whether to admit or exclude evidence, is considered harmless unless a substantial right of a party is affected. We have defined an error affecting a substantial right of a party as an error which had a substantial influence on the outcome or which leaves one in grave doubt as to whether it had such an effect.

*United States v. Velarde*, 214 F.3d 1204, 1211 (10th Cir. 2000) (quotations, citations, and alterations omitted).

Here, any error was harmless. A review of the trial transcript shows that Mr. Bertram, who presented his own defense, admitted time and again to the jury that he was a convicted felon who was not allowed to possess a handgun. He testified in detail about his convictions. R., Vol. VII at 183-85. Part of his

---

[3]     The government has attached to its response brief what are apparently copies of the relevant documents, and Mr. Bertram has filed no reply brief disputing that these are the documents at issue.

argument regarding his arrest was that the law enforcement officers involved in the traffic stop set him up when they found out he was a convicted felon. *See* R., Vol. VII at 191. And he admitted to the jury in his closing argument that he was a convicted felon; arguing: "I'm a convicted felon and I can't carry anything but Mace. In some states I can't even carry Mace." R., Vol. VII at 238. Mr. Bertram made this admission in (1) arguing that the guns were actually both found in the backseat of the car under a comforter where his wife, unbeknownst to him, had placed them; and (2) assuring the jury that, as a convicted felon, if he had known the guns were in the car he would have tossed them from the car window the minute he had seen emergency lights behind him. *See* R., Vol. VII at 237-39.

### III.

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge