**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 4 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

CHAD WASHINGTON,

       Defendant-Appellant.

No. 97-3201
(D.C. No. 96-CR-10060-1)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BRORBY**, and **MURPHY**, Circuit Judges.

      Chad Washington was convicted of possession with intent to distribute crack cocaine. The principal evidence against him was nearly 500 grams of that substance found in a safe bearing Mr. Washington's palm print, a tape recording in which he discussed the cocaine, and large amounts of cash found on his person and in his cars. Mr. Washington challenges much of this evidence. On appeal, he argues: (1) the cumulative

---

     [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

effect of governmental misconduct before the district court deprived him of his Constitutional rights to a fair trial and due process of law; (2) the district court erred in failing to exclude evidence on his prior convictions and cash possession; (3) the district court erred in instructing the jury on aiding and abetting; (4) the district court erred in failing to properly define "intent" in its instructions to the jury; (5) the district court erred in overruling his objections to sentencing; and (6) the district court erred in denying a new trial based on newly discovered evidence. Finding no prejudicial error, we affirm.

On April 30, 1996, Wichita, Kansas police officers executed a search warrant at 1545 North Pershing, the residence of co-defendant Sharron Griffin. During the search, officers located crack cocaine in two bedrooms and in the safe found in her living room closet. The cocaine in the safe was packaged in seventeen bags, each of which weighed approximately one ounce. Taken together, all the cocaine found in the house weighed 479.6 grams. Ms. Griffin was arrested for possession with intent to sell cocaine.

Following her arrest, Ms. Griffin denied ownership of the safe and told the police that Mr. Washington had brought the safe to her home. A palm print lifted from the safe matched that of Mr. Washington. Ms. Griffin agreed to cooperate with police.

At the suggestion of the police, Ms. Griffin used a tape recorder to record a conversation in which she, her sister, and Mr. Washington discussed the safe and its contents. After recording the conversation, Ms. Griffin returned to her home, rewound

the tape, and listened to be sure she had captured Mr. Washington's voice.  She then telephoned Detective Riniker of the Wichita Police Department who asked Ms. Griffin if she had remembered to record, either at the beginning or end of the tape, her name, and the date and time of the conversation with Mr. Washington.  Believing she was at the end of the tape, Ms. Griffin recorded the information.  As it turned out, she had recorded over part of her conversation with Mr. Washington.

Soon after adding her name, date, and time, Ms. Griffin turned the tape over to Detective Riniker.  In the surviving portion of the tape, Mr. Washington neither expressly admits nor denies ownership of the safe and its contents; however, he does suggest to Ms. Griffin that she tell police that another individual owned the safe.

As the case was developed, Mr. Washington was connected to two critical addresses and one vehicle.  He owned property at 2253 S. Belmont which he deeded to his mother and girlfriend prior to his arrest.  He also claimed residence at 133 W. May, #504.  The addresses and the vehicle assume importance because of what was seized from each.

At 2253 S. Belmont, police found an Infinity Q45 automobile they claimed belonged to Mr. Washington from which they took $38,900.  Although Mr. Washington argued the car did not belong to him and the cash found inside belonged to his mother and her cousin, documents found inside the vehicle established Mr. Washington had paid for

repairs to that vehicle. Further, an Infinity key had been found during the search of 2253 S. Belmont.

**A.**

Mr. Washington's first allegation of error is that he was denied due process because the police destroyed a portion of the audio tape that was admitted into evidence. We review for clear error the district court's determination that the government did not destroy potentially exculpatory evidence in bad faith. *United States v. Parker*, 72 F.3d 1444, 1451 (10th Cir. 1995).

As he did in the district court, Mr. Washington argues law enforcement officers listened to the tape and knew its content prior to the partial destruction. Mr. Washington has provided no support for his contention.

Government actors have a duty to preserve evidence that is Constitutionally material. *Id.* To satisfy the test for Constitutional materiality, the evidence must possess an exculpatory value that was apparent to police before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means. *California v. Trombetta*, 467 U.S. 479, 488 (1984). The mere "possibility" that evidence could have exculpated a defendant does not suffice to establish that its exculpatory value was "apparent" to police. *Parker,* 72 F.3d at 1451. The availability of a witness, such as Ms. Griffin's sister, who could testify about the content

of the destroyed evidence presents other reasonable means by which the defendant could have acquired comparable evidence. *Id.* at 1452.[1] In the absence of apparent exculpatory value, a party must show bad faith in the government's destruction of evidence. *Id.* at 1451. Mere negligence does not establish bad faith in this context. *Id.*

The trial court examined the tape and heard the testimony of Sharron Griffin and Detective Riniker. Mr. Washington has provided nothing to establish the district court committed clear error in determining the government did not destroy potentially exculpatory evidence in bad faith and in denying the motions for sanctions and dismissal.

**B.**

Defendant next argues the independence of the grand jury was corrupted by the presentation of "false evidence." We review de novo the district court's denial of a motion to dismiss a grand jury indictment. *United States v. Cowan*, 116 F.3d 1360, 1361 (10th Cir. 1997).

Mr. Washington made a pretrial motion to dismiss the indictment upon grounds of alleged prosecutorial misconduct, including the prosecutor's knowing presentation of false testimony to the grand jury. The district court denied the motion.

---

[1] In *Parker*, a highway patrol officer accidentally erased a portion of a video taped car stop. This court found no error in the district court's denial of the defendant's motion to dismiss. *United States v. Parker*, 72 F.3d 1444, 1452 (10th Cir. 1995).

This court has explained that consideration of dismissal of an indictment because of prosecutorial misconduct before a grand jury requires weighing several factors:

> First, a reviewing court must determine whether the claimed errors should be characterized as technical or procedural and affecting only the probable cause charging decision by the grand jury, or whether the alleged errors should be characterized as threatening the defendant's right to fundamental fairness in the criminal process. If the errors can be characterized as procedural violations affecting only the probable cause charging decision by the grand jury, then the defendant must have successfully challenged the indictment before the petit jury rendered a guilty verdict. If, however, the errors can be charged as threatening the defendant's rights to fundamental fairness as "going beyond the question of whether the grand jury had sufficient evidence upon which to return an indictment," a determination of guilt by a petit jury will not moot the issue.
>
> Second, it must be determined whether the prosecutor engaged in flagrant or egregious misconduct which significantly infringed on the grand jury's ability to exercise independent judgment. Thus even assuming misconduct, a failure by the defendant to show a significant infringement on the ability of the grand jury to exercise its independent judgment will result in the denial of a motion to dismiss.

*United States v. Kilpatrick*, 821 F.2d 1456, 1466 (10th Cir. 1987) (citations and internal quotations omitted).

Applying the first factor, we must ask if the alleged governmental misconduct is merely "technical." "Technical" errors are of a procedural nature and do not involve claims of fundamental fairness. *United States v. Taylor*, 798 F.2d 1337, 1339-40 (10th Cir. 1986) (citing *United States v. Mechanik*, 475 U.S. 66, 71-72 (1986)). By contrast, Mr. Washington's challenge to the grand jury indictment asserts the prosecutor elicited

- 6 -

perjured testimony or at least led the witness to make false implications regarding the evidence. *Id.* Because Mr. Washington's claims fall in the category of right to fundamental fairness, they are not mooted by the petit jury's determination of guilt.

Second, under the *Kilpatrick* test, we hold the prosecutor's behavior did not rise to the level of "flagrant or egregious misconduct which significantly infringed on the grand jury's ability to exercise independent judgment." On the tape recording submitted into evidence, Mr. Washington does not *deny* ownership of the cocaine. He also does not *admit* ownership. Mr. Washington's argument here is that the question and answer sequence asserts or implies the false statement that he *did* admit ownership. Mr. Washington argues that because the police officer stated he had listened to the tape, he must have known there was no such statement. Therefore, the officer's testimony amounts to perjury, and the prosecutor's failure to correct the incorrect implication amounts to the presentation of false evidence to the grand jury. At the very least, Mr. Washington argues, "if evidence exists . . . which casts serious doubt on the credibility of testimony which the jurors are asked to rely upon in finding an indictment, the prosecutor has an ethical duty to bring it to their attention." Nonetheless, we do not think that the testimony is so misleading it merits dismissal of the indictment.

Indeed, we have allowed an indictment to stand even in cases of perjured testimony before a grand jury if independent evidence exists to support the charges on the

assumption the grand jury would have returned the indictment without the perjurious testimony. ***United States v. Pino,*** 708 F.2d 523, 530 (10th Cir. 1983). Even though a defendant's admission of guilt might have significant impact on the jury in this case, there was a great deal of other evidence of Mr. Washington's participation in the charged activity. We think the prosecutor's behavior did not significantly infringe on the grand jury's ability to exercise independent judgment, and the district court correctly denied the motion to dismiss the indictment.

## C.

Mr. Washington next challenges the search warrant for 2253 S. Belmont. As a general matter, we review de novo the district court's determination of reasonableness under the Fourth Amendment. ***United States v. Kennedy***, 131 F.3d 1371, 1375 (10th Cir. 1997). Several issues are raised in connection with the warrant.

The first question is whether defendant had standing to attack the warrant. We review standing de novo. ***United States v. Shareef***, 100 F.3d 1491, 1499 (10th Cir. 1996)**.** At trial, Mr. Washington contended 2253 S. Belmont was not his home, but the government argued it was. On appeal, the parties reverse their positions.

When a warrant to search 2253 S. Belmont was issued, Mr. Washington had deeded away his title to his mother and his girlfriend two months before. When arrested on August 15, 1996, Mr. Washington gave 133 West May, #504 as his address. Mr.

Washington had resided at 2253 S. Belmont with his girlfriend for at least several months and made the mortgage payments. The district court found these facts supported Mr. Washington's reasonable expectation of privacy in the residence he shared with his girlfriend. *See **United States v. Donnes***, 947 F.2d 1430 (10th Cir. 1990). We agree.

Defendant next challenges the evidence presented to the issuing magistrate. We review "the reasonableness of a warrant to determine whether the issuing magistrate had a substantial basis for finding probable cause, giving great deference to the issuing magistrate's decision." ***Kennedy***, 131 F.3d at 1375. Mr. Washington argues statements made by the affiant in support of the warrant were false or misleading; therefore, they cannot properly serve as the basis for the warrant. We do not reach this issue because Mr. Washington did not raise it at trial. The failure to raise a Fourth Amendment challenge at trial waives the issue on appeal. ***United States v. Hart***, 729 F.2d 662, 665 (10th Cir. 1984). If a party raises the same general category of issues presented at trial, but adds a new or changed theory, we do not consider the new or changed theory on appeal. *See **Bancamerica Commercial Corp. v. Mosher Steel of Kansas***, 100 F.3d 792, 798-99 (10th Cir. 1996). Vague references to a point made before the district court do not preserve the issue for appeal. ***Tele-Communications, Inc. v. Commissioner***, 104 F.3d 1229, 1233 (10th Cir. 1997).

Although Mr. Washington challenged the search warrant on several grounds at trial, none of these included his present contention the underlying affidavit contained false statements which were the basis for the magistrate's finding of probable cause. It is a new theory not considered by the district court in determining whether the supporting affidavit provided a substantial basis for probable cause. Therefore, we shall not consider this new theory on appeal.

**D.**

Defendant next challenges the scope of the seizures. We review the district court's determination of reasonableness under the Fourth Amendment de novo. ***Kennedy***, 131 F.3d at 1375.

Armed with a warrant, DEA officers searched 2253 S. Belmont. Items seized pursuant to the warrant included marijuana, paraphernalia, currency, documentation and scales. The officers also seized certain items not listed including a washer, dryer, television, lawn mowers, three-wheel vehicle, two video cameras and two tripods. Detective Riniker of the Wichita Police Department was unable to ascertain when and by whom these items had been purchased but seized them at the direction of the DEA officers. At an evidentiary hearing, the district court determined the items were properly seized under the civil forfeiture statute, 21 U.S.C. §§ 881(a)(6), (b)(1), because they were

discovered incident to the execution of a valid search warrant and because the officers had a good faith belief the items represented proceeds of criminal activity.

Only evidence improperly seized outside the scope of a search warrant, and not all evidence, must be suppressed unless there was a flagrant disregard for the terms of the warrant. *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 875 (10th Cir. 1992). Like *U.S. Currency*, officers here seized items that had been named in the warrant and were indicative of drug trafficking involvement, in addition to the extra items not named in the warrant. At the time, however, Detective Riniker had information Mr. Washington had purchased cars and a house while unemployed and had been found to have large sums of cash on his person.

In light of the officer's information and the items named in the warrant and seized at the house, the district court found the officers had a good faith belief the unnamed items represented proceeds of criminal activity. Although a lawn mower, washer, and dryer arguably are not obvious evidence of drug activity, items such as jewelry and tractors were seized under similar circumstances in *U.S. Currency*. In denying Mr. Washington's motion to suppress, the district court ruled correctly.

## E.

Defendant next asserts the government failed to comply with Fed. R. Crim. P. 16 and the discovery order. Discovery rulings of the trial court are reviewed for abuse of

discretion.  ***GWN Petroleum Corp. v. OK-TEX Oil & Gas, Inc.,*** 998 F.2d 853, 858 (10th Cir. 1993).  We review allegations of ***Brady***[2] violations de novo.  ***United States v. Woodlee***, 136 F.3d 1399, 1411 (10th Cir. 1998).

Before Mr. Washington's August 26, 1996 detention hearing, the prosecution provided Mr. Washington with a copy of his audio taped conversation with Ms. Griffin. On the same day, the government filed its motion for detention which included attachments such as a draft transcript of the tape recording, Mr. Washington's prior record, copies of police reports of prior arrests, paperwork seized from Mr. Washington and various automobiles, the fingerprint report, and several witness statements.

On January 24, 1997, Mr. Washington's counsel made several motions for sanctions on alleged government suppression of the original audio tape and testimony regarding the destroyed portion of the tape.  He also asked for dismissal or an order setting a deadline for government compliance with the discovery order.  By the time of the hearing on these motions, the government had delivered, or promised to deliver the next day, most of the requested discovery.  The district court ordered the government to turn over the list of Ms. Griffin's drug sources and any ***Brady*** material.  The court also noted the government could not provide a record of the statements deleted from the audio tape because none existed.  The trial court did not rule specifically on the original version

---

[2] ***Brady v. Maryland***, 373 U.S. 83 (1963).

of the audio taped conversation, although the prosecution notes that on October 24, 1996, defense counsel heard and recorded the original tape. The government complied with the January 31, 1997 discovery order by turning over materials before trial.

Fed. R. Crim. P. 16(d)(2) confers upon a trial court broad discretion in imposing sanctions on a party failing to comply with discovery orders. *United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir. 1988). Mr. Washington has made no showing that the prosecution failed to comply with discovery orders or that any unnecessary delay resulted from the time frame in which defense counsel received discovery materials. Mr. Washington provides no support for the claim that the trial court abused its discretion in its treatment of the discovery issues before it.

Following a hearing on Mr. Washington's pretrial motion to compel disclosure of certain evidence under *Brady*, the district court ordered the government to disclose to the defense any evidence it had regarding Ms. Griffin's cocaine sources. After an *in camera* hearing, the district court decided not to compel the government to disclose the identity of a confidential informant who had purchased drugs at the home of Ms. Griffin. Before trial, the government provided Mr. Washington with a list of sources named by Ms. Griffin in questioning. During cross-examination, however, Ms. Griffin named two cocaine suppliers whose names did not appear on the list provided to Mr. Washington before trial.

A defendant establishes a ***Brady*** violation by demonstrating: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material. ***Woodlee,*** 136 F.3d at 1411. We have explained, *"**Brady** mandates reversal when a failure to disclose is coupled with a finding that the evidence is 'material,' meaning 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" **United States v. Scarborough**, 128 F.3d 1373, 1376 (10th Cir. 1997) (citing **United States v. Bagley**, 473 U.S. 667, 682 (1985)).*

Mr. Washington sought information on Ms. Griffin's drug suppliers to support his theory that Ms. Griffin had obtained the crack cocaine found in the safe from a supplier other than Mr. Washington, and he had not been the owner of the seized cocaine. Mr. Washington argues Ms. Griffin was an admitted cocaine dealer who supported her children with the proceeds of her dealing. According to Mr. Washington, the cocaine in the safe was left either by Ms. Griffin's husband (before he began serving jail time) or supplied by another dealer. A complete list of suppliers and access to the confidential informant who "might help disclose the identities" of suppliers would assist Mr. Washington in demonstrating he was not the owner of the safe and its contents.

Although Mr. Washington's theory may be rational, it does not satisfy this court's standards for establishing a ***Brady*** violation. First, Mr. Washington has not shown the

prosecution suppressed evidence. The government complied with the district court's orders to turn over its list of suppliers before trial. *See **Scarborough***, 128 F.2d at 1376 ("***Brady*** is not violated when the ***Brady*** material is made available to defendants during trial."). The government turned over the material it had; there is no support for the implication that the government suppressed advance notice of the names of the additional sources identified by Ms. Griffin at trial.

Second, the additional names and information appear to have only marginal "favorable" value to Mr. Washington. As the district court acknowledged, Mr. Washington was "entitled to attempt to establish that he was not the owner of the crack cocaine and that Griffin obtained the crack cocaine from some other supplier." However, the fact Ms. Griffin had two or four drug suppliers is equally unhelpful to Mr. Washington in the absence of any evidence one of them owned the safe and its contents.

Third, Mr. Washington has not demonstrated the new evidence was material. The jury heard the names and still did not find in Mr. Washington's favor. Defense counsel heard the names but did not introduce evidence about these additional suppliers[3] or claim

---

[3] Ms. Griffin revealed the names in cross-examination on Thursday. The government rested Monday. If the weekend would not have provided defense counsel with sufficient time to obtain evidence about the additional drug suppliers, it certainly would have been enough time to prepare a motion for a continuance to investigate the information. ***United States. v. Kelly***, 14 F.3d 1169, 1176-77 (7th Cir. 1994); *see also* ***United States v. Johnson***, 911 F.2d 1394, 1404 (10th Cir. 1990) (stating the defendant should have moved for a continuance if he needed more time to investigate evidence that
(continued...)

that he would have if provided with the names at an earlier date. There is no reasonable probability that disclosure of the two names or of the identity of the confidential informant would have produced a verdict in Mr. Washington's favor.

**F.**

Mr. Washington specifically challenges the prosecutor's statements about the criminal convictions of his friends, his firearms possession, and his domestic violence arrest. We review for abuse of discretion the district court's denial of a defendant's motion for a new trial based on claims of improper statements by the prosecutor. ***United States v. Oles***, 994 F.2d 1519, 1524 (10th Cir. 1993).

At trial, defense counsel attempted to impeach Ms. Griffin by cross-examining Officer Walker about the fact that Johnny Dean, who was found in Ms. Griffin's home on the night of her arrest, had a felony conviction. In his objection, the prosecutor stated if the court was going to permit impeachment by evidence that a witness had friends with convictions, the prosecution would employ the same tactic by impeaching Mr. Washington with the "long list" of his friends' convictions. The court sustained the prosecutor's objection. At the end of testimony, the court instructed the jury the statements of counsel were not evidence.

---

[3](...continued)
failed the ***Brady*** materiality test).

In redirect examination of the same police officer, the prosecutor posed the leading question, "you know that Sharron Griffin is not the only one in this courtroom who possessed a firearm," while gesturing toward Mr. Washington. Defense counsel objected. The prosecutor then stated that he would put on a witness who would testify to Mr. Washington's firearm possession. When the prosecutor did call witnesses to testify on this matter, the district court sustained objections of defense counsel. The court instructed the jury to disregard the legal arguments and objections of counsel.

On direct examination, Officer Garrison stated that Mr. Washington had been arrested for domestic violence. The district court instructed the jury to disregard that statement.

In his opening statement, the prosecutor referred to electronic scales seized from 2253 S. Belmont. Although a pretrial order notes such scales were found, evidence was never offered at trial. The government states that after defense counsel objected to questioning of a police officer present when the scales were seized, the government "changed its evidence presentation and simply overlooked the scales."

A criminal conviction "is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 10 (1985). Improper prosecutorial statements must be viewed in the context of the strength of the evidence;

whether curative instructions were given; and, whether the prosecution was responding to an attack made by defense counsel. *See Oles*, 994 F.2d at 1524.

Applying the *Oles* test, there is strong evidence against Mr. Washington, including his palm print on the safe, items seized under the search warrant, the audio tape recording, and various witness testimony. The district court gave curative instructions on the statements about Mr. Washington's friends with convictions, firearms possession, and domestic violence arrest. Moreover, defense counsel opened the door for the prosecutor's statements on the criminal convictions of Mr. Washington's friends. Although the prosecutor's statement about the scales became improper because this evidence was not admitted, *United States v. Dickey*, 736 F.2d 571, 599 (10th Cir. 1984), it is very unlikely this statement alone impaired the jury's ability to judge the evidence fairly. *Young*, 470 U.S. at 12. In light of these factors mitigating the influence of the prosecutor's conduct on the jury, Mr. Washington has failed to show the trial court abused its discretion in denying his motion for a new trial.

## G.

Mr. Washington next argues the district court erred by failing to exclude evidence of prior convictions, cash possession, and a "drug dealer profile." The district court denied his motion *in limine* to exclude any evidence of his possession of large amounts of cash. Subsequent testimony established seizures of over $40,000 from him. Mr.

Washington's prior conviction of possession of cocaine was admitted as Fed. R. Evid. 404(b) proof of knowledge and intent. Although he objects to the government's use of drug dealer profile evidence, he cites no testimony in the record relating to such a profile.[4] We review for abuse of discretion the district court's admission or exclusion of evidence, *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995); *United States v. Davis*, 40 F.3d 1069, 1073 (10th Cir. 1994), including Fed. R. Evid. 404(b) evidence. *United States v. Hardwell*, 80 F.3d 1471, 1488 (10th Cir. 1996).

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. To be unfairly prejudicial under Fed. R. Evid. 403, evidence must not be merely damaging to a party's case, but must also have an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir. 1991) (citations omitted).

In the context of drug distribution cases, large sums of cash are sufficiently probative to warrant admission under Fed. R. Evid. 403. *Id.* at 1085. This is a drug distribution case where the district court ruled the probative value of the large sums of cash was not outweighed by the danger of unfair prejudice. Mr. Washington's arguments

_____

[4] Counsel has failed to comply with 10th Cir. R. 28.2(b).

on unfair prejudice are not convincing because, as we have already noted, there is a wealth of "other evidence" of his participation.

Evidence of other crimes, wrongs, or acts may be admissible under Fed. R. Evid. 404(b) if it complies with certain strict standards. *United States v. Robinson*, 978 F.2d 1554, 1558-59 (10th Cir. 1992). Because Mr. Washington denied knowledge of or intent to distribute the crack, and asserted the palm print on the safe must have reflected accidental touching, evidence of his past possession had probative worth in establishing intent, knowledge, and absence of mistake or accident. Mr. Washington tries to distinguish the previous offense on grounds it involved only 30 grams of cocaine, whereas the instant charge is for over 400 grams, and it occurred over six years before the most present offense. These arguments do not establish an abuse of discretion in the trial court's finding that the offenses were sufficiently similar and close in time to the current matter. Mr. Washington has not shown the relevance and probative value of this evidence were substantially outweighed by the potential for unfair prejudice.

Several courts have condemned the use of profiles as substantive evidence of guilt. *United States v. McDonald*, 933 F.2d 1519, 1521 (10th Cir. 1991). Because we have not been shown where such evidence was used in this case, this argument is specious.

**H.**

At trial, Mr. Washington objected to the submission of an aiding and abetting instruction. He argues Ms. Griffin's possession with intent to distribute the crack cocaine

was distinct from any charges involving him. We review de novo the sufficiency of jury instructions in a criminal case. ***United States v. Barrera-Gonzalez***, 952 F.2d 1269, 1271 (10th Cir. 1992). We review de novo whether the jury should have been given a matter to decide. ***United States v. Pena***, 930 F.2d 1486, 1491 (10th Cir. 1991).

Despite Mr. Washington's argument, we have already held, "a defendant can be convicted as an aider and abettor even though he was indicted as a principal for commission of the underlying offense and not as an aider and abettor, providing that the commission of the underlying offense is also proven." ***United States v. Langston***, 970 F.2d 692, 706 (10th Cir. 1992) (citations omitted). When the jury is instructed on both theories, we affirm the convictions if the government has sufficiently proved either the substantive offense or the aiding and abetting offense. ***Id.*** Mr. Washington's distinction between cocaine stored in the bedroom versus in the safe does not immunize him from conviction for aiding and abetting.

## I.

At the conference on jury instructions, Mr. Washington objected that the proposed instructions defining "possession with intent to distribute" and "aiding and abetting" failed to properly define the element of "intent." We conduct a de novo review to determine whether, as a whole, jury instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards.

- 21 -

*United States v. Winchell*, 129 F.3d 1093, 1096 (10th Cir. 1997). When we review a claim of error in jury instructions, "we consider all the jury heard and, from [the] standpoint of the jury decide not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to determine these issues." *United States v. Voss*, 82 F.3d 1521, 1529 (10th Cir. 1996). "No particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law." *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1365 (10th Cir. 1994) (internal quotation and citation omitted).

Mr. Washington argues that the first element of the instruction given on possession with intent to distribute failed to define accurately the element of intent. He also proposes the aiding and abetting instruction could have been improved if the third element of that instruction were "replaced with 'that the defendant acted with the intention of causing the crime to be committed.'"

We believe the instructions as a whole properly inform the jury of the factors it had to find to convict. Even without the words preferred by Mr. Washington, the instructions on both counts provided the jury with "an intelligent, meaningful understanding of the applicable issues and standards." *Winchell*, 129 F.3d at 1096 (quotation and citation omitted). Because we lack "substantial doubt that the jury was fairly guided," we cannot reverse. *Id.*

**J.**

Appellant next questions the sentence he received. We review the district court's interpretation of sentencing statutes and guidelines de novo, *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997), and the district court's factual findings in support of sentence enhancement for clear error. *United States v. Valdez-Arieta*, 127 F.3d 1267, 1270 (10th Cir. 1997). We will "not reverse the district court's findings unless they are without factual support in the record or unless after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been made." *Id*. at 1270 (internal quotations and citations omitted).

The government provided Mr. Washington with notice that it planned to introduce into evidence his 1990 conviction for cocaine possession, as well as his domestic violence arrest. Mr. Washington objected at sentencing to the addition of criminal history points for two previous disorderly conduct convictions. The district court overruled his objections. Under the Sentencing Guidelines, the district court determined a total offense level of 34 and a criminal history category of III, resulting in a sentence of 240 months. This sentence is consistent with the statutory minimum penalty of twenty years for possessing more than 50 grams of crack cocaine after a prior conviction for a felony drug offense. 21 U.S.C.A. § 841(b).

When the Sentencing Guidelines conflict with statutes, the statutory law prevails. *United States v. Allen*, 16 F.3d 377, 379 (10th Cir. 1994). Further, "where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b). Twenty years or 240 months is the statutory minimum sentence for an offense involving more than 50 grams of crack cocaine following a previous felony conviction. 21 U.S.C. § 841(b)(1)(A)(iii). Because the statutory minimum applies in this case, any error in the calculation of the guideline sentence is irrelevant.

## K.

In support of a post-trial motion for a new trial based on newly discovered evidence, Mr. Washington offered the affidavit of Johnnie Dean who, according to the affidavit, would testify that he had observed Ms. Griffin open the safe, remove cocaine, and sell it to another individual. In pretrial interviews by the prosecution and the defense, this "new" witness had not disclosed any information about the safe or its contents. The district court dismissed the motion for a new trial. We review the district court's decision for abuse of discretion. *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997); *United States v. Toro-Pelaez*, 107 F.3d 819, 827 (10th Cir. 1997).

Trial courts may grant a new trial "if required in the interest of justice." Fed. R. Crim. P. 33. However, this court has explained that "a motion for a new trial is not

regarded with favor and should only be granted with great caution." *Sinclair*, 109 F.3d at 1531. A new trial may be granted only under delineated circumstances. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992).

It is not entirely clear why Mr. Dean did not reveal his knowledge about Ms. Griffin's sale of cocaine from the safe when he was interviewed by the prosecution and defense. Mr. Washington states that Mr. Dean had feared that he, too, would be charged if he talked about drug purchases, but he finally came forward to prevent Mr. Washington from going to jail for a crime he did not commit. The government's view is that Mr. Dean "lied" to the investigators. The sentencing trial record shows Mr. Dean said he did not share this information with investigators because they did not ask him about it. In any case, circumstances cast doubt on whether the evidence was discovered after trial or whether a lack of due diligence caused the defendant's failure to discover it in time for trial.

Mr. Washington argues the new evidence does not merely impeach the credibility of Ms. Griffin, but also supports the defense theory that Ms. Griffin was the owner and dealer of the cocaine. Therefore, he believes the new evidence is material to the principal issue in the case – the ownership of the safe and cocaine – and that with this evidence, a jury would probably acquit in a new trial. Further, if the defense had been able to use this evidence in the original trial, Mr. Washington claims the district court would have looked

more favorably on his request for access to the confidential informant.  Although his conjectures may be plausible, we cannot say the district court abused its discretion in finding otherwise.

We **AFFIRM** the district court on all of the issues raised on appeal.  Mr. Washington has not shown that the cumulative effect of governmental misconduct deprived him of a fair trial or due process of law, or that the district court erred in denying any of his motions on evidentiary and discovery issues.  The instructions to the jury provided a sufficient statement of the law and standards.  Further, Mr. Washington's "new" post-trial evidence did not offer grounds for a new trial.


ENTERED FOR THE COURT


John C. Porfilio
Circuit Judge